IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| Kelli Denney, <br>     An individual, <br><br>     Plaintiff, <br><br> v. <br><br> (1) Board of County Commissioners <br>     of Carter County, <br>     an Oklahoma subdivision; <br> (2) Carter County Sherriff Department, <br>     An Oklahoma subdivision; <br> (3) Sheriff Chris Bryant, Carter County <br>     in his official and individual capacity; <br> (4) Milton Anthony, former Sherriff, <br>     Carter County, in his individual <br>     An official capacity <br><br><br>     Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No.  18-CV-42-RAW <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT

Comes Now, Plaintiff, Kelli Denney, by and through counsel and for her causes of action states as follows:

1. At all material times, Plaintiff, Kelli Denney, has been a resident of the State of Oklahoma, in Carter County, within the venue and jurisdiction of this Court.

2. At all material times, Carter County, State of Oklahoma has been an Oklahoma subdivision duly organized under the laws of the State of Oklahoma ("Carter County"). Pursuant to the Oklahoma Constitution, Art. 27, § 1, Carter County is a "body politic and corporate." Pursuant to 19 O.S. § 1, Carter County must be sued

in the name of the Board of County Commissioners of Carter County, pursuant to 19 OS § 4.

3. At all material times, the Carter County Sheriff Department ("Sherriff Department") was duly organized and authorized as a lawful office under Oklahoma Constitution, Art. 27, § 2. The Carter County Sheriff is a duly elected position pursuant to 19 O.S. § 131. The Carter County Sheriff acts on behalf of Carter County to keep and preserve all laws within the county. The Oklahoma County Budget Act defines the Sheriff as a County officer 19 O.S. § 1404(8). The Sherriff's acts as a constituent department of the County 19 O.S. § 1404 (7). The Oklahoma Governmental Tort Claims Act (GTCA) likewise recognizes County officers and their staffs as County employees. 51 O.S. § 152. The Carter County Sheriff is an agent of Carter County.

4. Chris Bryant is the current duly elected Sheriff of Carter County.

5. Milton Anthony is the former elected Sherriff of Carter County and has been at all material times a resident of Oklahoma within the venue of this court.

6. Defendants Carter County and Carter County Sherriff department are also, on information and belief, a joint or single employer of Plaintiff with common interrelations of operations, common management, common labor relations, common financial control and common financial transactions between them.

7. Plaintiff is a white female, and was approximately 26 years old at the time of her termination.

8. Beginning in about February 2011 Plaintiff began working for Carter County and the Carter County Sherriff department working in the Carter County jail.

9. In July 2015, Anthony asked Plaintiff to marry him. Plaintiff laughed it off. But, Anthony replied "well let's have the honeymoon, first," requesting sexual favors.

10. Around the same time, in July 2015, Plaintiff was in a significant economic hardship. Plaintiff had advised a family "friend," then Sherriff Milton Anthony, about her economic situation. On the same as the "honeymoon" request by Anthony, he texted Plaintiff "you help me, I help you" which was a suggestion he would hire her husband as a Carter County Deputy Sherriff, with a considerably increased pay rate, if she had sexual relations with him. Plaintiff acquiesced in his economic bribery and engaged in sexual relations with Anthony. About July 30, 2015, Anthony hired Plaintiff's husband as a Deputy Sherriff making thousands more per month than his prior position.

11. Plaintiff naively believed that if she consented to sexual relations one time with Anthony, he would hire her husband. But, Anthony forced the relationship to continue. Between July 2015 and April 2016, Anthony used various tactics to cause Plaintiff to continue the sexual relationship, using both carrot and stick approaches. These approaches including without limitation; threats and suggestions to terminate Plaintiff or her husband unless she related to sexual activities; at times changing, and threatening to change, Plaintiff's work schedule to cause her difficulties when she was not cooperating with Anthony's demands;

and, at times providing Plaintiff Plaintiff flexible scheduling to attend college classes, or deal with family matters.

12. After April 15, 2016, Plaintiff again refused the sexual advances of Anthony. On April 18, 2016, Plaintiff advised Anthony that being "unfaithful" to her husband was causing emotional problems for her and adversely effecting her family. However, Anthony continued to seek sexual activities, including telling Plaintiff "I need a kiss" and asking, "do you consider kissing unfaithful." Anthony also texted Plaintiff "U act like its all me, *you first agreed to everything to get Johnny (Plaintiff's husband) hired, I did that to better your livelihood."* After Plaintiff continued to reject his advances, he texted that her schedule changed to "8 to 5 from now on, I get tired of being used, it is wat it is."

13. On May 20, 2016, Plaintiff told Anthony "I don't want to cheat on my husband." Anthony told Plaintiff "I'm moving you out of the window and putting you back in the jail." Plaintiff responded "no." Anthony's statement was a clear threat to Plaintiff, which would result in dramatically changed job duties, responsibilities and functions.

14. On May 20, 2016, Anthony told Plaintiff "when we first had this agreement and everything… the only thing I told you to do this deal, and we agreed on everything; and I *said you scratch my back and I scratch yours*, that's what I said."

15. On May 20, 2016, Anthony further told Plaintiff "well, that doesn't mean down the road you just stop scratching. Well then *when you stop scratching, then I stop scratching.* You see what I'm saying."

16. On May 20, 2016, when Kelly objected to the change in job assignment, stating "I don't want to leave the window," Anthony respond by saying "it is what it is. *You stop doing stuff, I stop doing stuff.*"

17. Following the continued solicitation of sexual favors, in combination with the position reassignment, and threats of continued retaliation if she refused further sexual activities, Plaintiff reported the matter to the Carter County District Attorney. She further cooperated with the Oklahoma State Bureau of Investigation with their investigation into the conduct of Anthony, and provided information leading to a finding of probable cause to arrest Anthony. Plaintiff's OSBI cooperation was made in publicly filed court records and newspaper accounts.

18. During her employment, former Sherriff Milton Anthony secured employment for his ex-wife as his assistant in the Carter County Sheriff Department. Anthony's ex-wife was, at all material times, the current wife of the Carter County Under Sherriff. Anthony also secured the employment for his two daughters in the Carter County Sherriff Department.

19. Following her reporting of sexual harassment, intimidation, and economic sexual abuse to law enforcement and in media outlets, Defendant's Carter County and Sherriff Department placed Plaintiff on administrative leave until approximately September 9, 2016. Such leave created the appearance and impression that

Plaintiff did something wrong. During her absence, Defendants sought applications and internal job reassignment from other employees to fill her position. The day of Plaintiff's return, immediately prior to her return, her position was given to another employee.  When Plaintiff was finally permitted to return to work for Defendants, she had a change in shifts, hours of work and job assignments. She was further assigned to more dangerous positions, for which she was not properly trained to defend herself or subdue dangerous and combative inmates.

20. Plaintiff was following her return to work, Plaintiff was disparity treated differently form other employees, including being suspended for conduct other were involved in.

21. On or about December 13, 2016, Defendants Carter County and Sherriff Department terminated Plaintiff's employment. The proffered explanation was pretextual and disparate. The proffered explanation was that she had left work early some two months before, after she was vomiting at the jail. The proffered explanation further was that she permitted an inmate to be released, after he completed his senate, but was not placed into rehabilitation. Despite the fact that another employee failed to screen the release of the prisoner, the other employee was not disciplined. Further, other of Defendant's employees,  employees working at the Carter County jail, who released prisoners who were not supposed to be released were not fired for such.

22. Subsequent to her reported sexual misconduct by Anthony, his other family members employed at the Sherriff department made threats against her if she continued to pursue and cooperate with authorities investigating Anthony.

23. Anthony was arrested and charged with bribery for his sexual demands of Plaintiff. Anthony eventually entered an Alfred plea and agreed to cease actives to be re-elected Sherriff.

24. Prior to her reporting sexual misconduct by Anthony, and rejecting his advances, Plaintiff had an exemplary work record. She was considered to meet or exceed performance expectations.

25. Other male employees, and employees younger than Plaintiff, and younger than age 40, were not disciplined, or not terminated, for the same, similar, or more egregious conduct than that alleged against Plaintiff.

26. Plaintiff timely made a charge of gender discrimination and retaliation to the EEOC on May 19, 2017. On November 7, 2017 the EEOC mailed its notice of right to sue in such charge. Plaintiff timely files this action within 90 days of her receipt of such notice of right to sue.

27. Plaintiff timely submitted her tort claim notice to Carter County Clerk and the Carter County Sherriff department on May 19, 2017 and timely files this action thereto.

## Count 2: Gender Discrimination

28. All other paragraphs are incorporated herein.

29. Defendants Board of County Commissioners of Carter County, Carter County Sheriff Department, Sheriff Chris Bryant and Milton Anthony in their official capacity each qualify as an employer for purposes of gender discrimination claims under Title VII, 42 U.S.C. § 2000e, et. seq. In the alternative, Carter County Sheriff Department and Sheriff Chris Bryant in his official capacity, were at all times material hereto and as described herein, acting as agents of Carter County.

30. Plaintiff is female.

31. Plaintiff's termination is an adverse action within the meaning of Title VII, 42 U.S.C. § 2000e, et. seq.

32. The proffered reason given by Defendants is false and pretextual. Similarly situated males and young employees were treated differently and better than Plaintiff.

33. Plaintiff's termination, suspension with pay, job reassignment on September 9, 2016, and her suspension in October 2016 by Defendants, individually and in concert, was because of her gender in violation of Title VII, 42 U.S.C. § 2000e, et. seq.

34. Plaintiff's lengthy job suspension with pay, reassignment on September 9, 2016, and thereafter, and her suspension in October 2016, are adverse actions.

## Count 2: Retaliatory Discharge

35. All other paragraphs are incorporated herein.

36. Defendants Carter County and Carter County Sherriff Department are employers employers having more than 15 employees for claims under Title VII, 42 U.S.C. §

2000e, et. seq. In the alternative, Carter County Sheriff Department and Sheriff Chris Bryant in his official capacity, were at all times material hereto and as described herein, acting as agents of Carter County.

37. Prior to July 20, 2016, Plaintiff opposed discrimination based on protected status, including her gender and sexual harassment. Plaintiff engaged in protected opposition to unlawful employment practices under the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3

38. Defendant employers were aware of her opposition to discriminatory and retaliatory unlawful employment practices.

39. Plaintiff suffered tangible adverse employment action as a result of his protected opposition including Plaintiff's termination, suspension with pay, job reassignment on September 9, 2016, and her suspension in October 2016 by Defendants, individually and in concert.

40. There is a causal connection between the protected opposition and the adverse employment action, including disparate treatment, failure to follow defendant's policies in termination, and use of pretextual reasons for termination.

41. But for her protected activity, Plaintiff would not have been fired, otherother wise suffer tangible employment action.

## Count 3:  Wrongful Discharge

42. All prior paragraphs are incorporated herein.

43. On or about December 13, 2016 Defendants Carter County and Carter County Sherriff Department individually and collectively, terminated the employment of Plaintiff.

44. These Defendants termination of Plaintiff violated the dominate and well-defined public policy of the State of Oklahoma. The well-defined and dominate public policy of the State of Oklahoma includes, without limitation, the right to be free of physical assault and battery in the work place; the right to a safe working environment, 40 O.S. §§ 178 & 403.

45. Oklahoma public policy further protects reporting of criminal acts perpetrated by Defendant's employees against Plaintiff for assault and battery.[1]  Supervisor and co-worker assaults and batteries on employees affects the health and safety of employees. Such Assaults and batteries are criminal acts.  Plaintiff's termination in retaliation for reporting and complaining about such assaults and batteries by co-workers and managers violates Oklahoma public policy.

46. Plaintiff further reported the criminal conduct of Sherriff Anthony, including that of bribery, in conditioning the employment of her husband and herself upon the sexual favors of Plaintiff.

47.  As a direct and proximate result of the employer  Defendants conduct, described above, Plaintiff has and will continue to suffer damages, including loss of pay and

---

[1] See *Burk v. K-Mart Corp.*, 770 P.2d 24 (Okla. 1989), favorably citing,  *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 421 N.E. 2d 876, 52 Ill. Dec. 13 (Ill. 1981); and *Turner v. Reynolds Ford, Inc.*, 1998 U.S. App. LEXIS 9552 (10th Cir. 1998) (unpublished).

benefits, future loss of pay and benefits, pain of mind and body, emotional distress, and anxiety.

## Count 4: Defamation

48. All other paragraphs are incorporated herein.

49. All prior paragraphs are incorporated herein.

50. The defendants intentionally, or negligently, published, and caused Plaintiff to publish, to third parties untrue information, and information which implies untrue information, about Plaintiff. Such includes that she purposefully, knowingly, and intentionally released a prisoner without authorization.

51. The actions of Defendants were done within the scope of their employment. Defendants actions in defaming Plaintiff were 'fairly and naturally incident to County and Sheriff Department business and were done, although mistakenly or ill advised, with a view to further the such interest, or from some impulse of emotion which naturally grew out of or was incident to the attempt to perform their business.' Actions of Defendants employees arose from an emotional response to actions being taken for the employer. In the alternative, the actions of Bryant were made in his individual capacity.

52. Defendants caused Plaintiff to publish to third parties, and continue to cause Plaintiff, including potential employers, false information, as described above. Defendants' action reasonably foreseeably caused Plaintiff to re-publish false information when Defendant knew or should have known that Plaintiff had no

   reasonable means of avoiding republishing false information related to her termination.

53. Defendants actions were false and were made with reckless disregard for the truth of such statements including being done while entertaining serious doubts as to the truth of their statements. Defendant statements directly impact and related to Plaintiff's employment and ability to secure employment.

## Damages

54. The acts and conduct of Defendant Anthony and Bryant individually , described above, were malicious, spiteful, and in willful and reckless disregard for the legal rights of another.

55.  The acts and conduct of Defendants, described above, are the proximate cause of compensatory damage to Plaintiff, including loss of earnings and benefits, out of pocket costs otherwise covered by insurance,  loss of earning capacity, emotional distress, pain of mind and body, all in an amount in excess of $75,000.00, excluding costs, fees, and interest.

Wherefore, Plaintiff prays that judgment be rendered in her favor and against Defendants, individually and jointly,  in an amount in excess of $75,000.00, and as permitted under, together with back-pay,  interest, costs, expenses, attorney fees, reinstatement or front pay as appropriate, liquidated damages equal to all lost salary, wages, employment benefits,  and injunctive relief barring further discrimination against Plaintiff upon her reinstatement, and other compensation denied as a result of termination,  and any and all other legal or equitable relief to which she is entitled.

Jury Trial Demanded

Attorney Lien Claimed

Respectfully Submitted,

\_s/Loren Gibson_____
Loren Gibson, OBA 14348
Gibson & Associates, P.L.C.
105 N. Hudson, Suite 312
Oklahoma City, OK 73102
405/270-0900
405/270-0903 (fax)
Counsel for Plaintiff